[Civ. No. 8399.   Fourth Dist., Div. Two.   Nov. 28, 1967.]

ROBERT PHILO, Plaintiff and Respondent, v. GEORGE LANCIA, Defendant and Appellant.

Wilson, Wilson & Borror and Caywood J. Borror for Defendant and Appellant.

King, Mussell & Garza and Florentino Garza for Plaintiff and Respondent.

TAMURA, J.—Defendant appeals from a judgment on a jury verdict awarding plaintiff damages for personal injuries suffered by him in an intersection automobile collision. The principal issue on this appeal is whether the court committed reversible error in giving an instruction on last clear chance.

Under settled rules the evidence will be viewed in the light most favorable to plaintiff.

The accident occurred about 4 p.m. on July 11, 1964, at the intersection of Oakwood and Live Oak Streets in the open desert area near Hesperia. Plaintiff, driving a 1963 Ford Econoline panel pick-up, was southbound on Oakwood and defendant, driving a 1961 Ford 1½-ton flat-bed truck laden with about 3 tons of rocks, was westbound on Live Oak. The intersection is in a 65 miles-per-hour zone and there were no traffic controls. There were no visual obstructions to the approaches to the intersection; the weather was dry and clear; and both roads were paved.

Plaintiff was travelling between 40-45 miles per hour. At some undetermined point north of the intersection he looked to the left and observed defendant's truck some distance from the intersection. Plaintiff was unable to give an estimate of the distance but testified that it was at a 45-degree angle with his vehicle and the intersection. He estimated the speed of defendant's vehicle as about the same as plaintiff's. Plaintiff noted that defendant's vehicle was not slowing down for the intersection so he applied his brakes, causing his vehicle to go into a four-wheel skid, and at the same time sounded his horn. When defendant still did not appear to be slowing down, plaintiff attempted to swerve to the right causing his vehicle to go partly onto the shoulder. He ultimately skidded into the intersection.

Prior to coming onto Live Oak Road, defendant had unloaded a portion of the rocks at a house located approximately 300 feet east of the intersection. Estimates of his speed prior to the accident as given by various witnesses ranged from 5 to 45 miles per hour. Defendant estimated it at about 15-18 miles per hour, the investigating officer at 25-30 miles per hour and plaintiff at 40-45 miles per hour. Defendant did not observe plaintiff's vehicle until he heard the horn sounding at which time plaintiff's vehicle was 100 or 120 feet away. A witness who observed the accident from the house where defendant had unloaded the rocks testified that when he heard plaintiff sound his horn, he looked up and observed plaintiff's vehicle to be some 100 feet northerly of the intersection.

Defendant testified that when he first observed plaintiff's vehicle he realized plaintiff would be unable to stop before entering the intersection. Defendant, nevertheless, stepped on the accelerator in an attempt to clear the intersection before plaintiff entered. Just as defendant's vehicle entered the intersection, defendant applied his brakes and skidded into the left front of plaintiff's vehicle.

The brakes on defendant's truck were in good working order and, according to the investigating officer, the truck would have stopped within an additional 3-5 feet had there been no impact. The point of impact was approximately 12 feet south of the north edge of Live Oak Drive and 20 feet west of the east edge of Oakwood. The precise point could not be determined because of the water, gasoline and other debris on the highway.

The measured skid marks left by defendant's truck commenced 2 to 3 feet east of the intersection and consisted of the following four marks from its rear dual wheels: left outside wheel 18 feet, left inside wheel 17 feet 4 inches, right inside wheel 11 feet 9 inches, right outside wheel 9 feet. The longest skid mark left by plaintiff's vehicle was 114 feet and commenced about 87 feet north of the intersection. All four wheels of plaintiff's vehicle left skid marks.

The evidence was in sharp conflict as to which vehicle entered the intersection first. It was plaintiff's testimony that both vehicles entered about the same time.

On the foregoing evidence the trial court instructed the jury on the issue of last clear chance. Defendant contends that this constituted prejudicial error.

The purpose of the last clear chance doctrine is to relieve the injured party from the rigid application of the rule of contributory negligence in proper circumstances. "This doctrine, which usually is justified only by vague statements in terms of 'proximate cause,' places its emphasis upon the time sequence of events, and holds the defendant liable if, immediately prior to the harm, he has the superior opportunity to avoid it. (Prosser on Torts, second ed., 1955, p. 290.)" (*Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 739 [306 P.2d 432].) The principle has been referred to as the "humanitarian doctrine." (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 739.)

The doctrine may be invoked only when the jury can properly find on the evidence the existence of the following elements: "(1) that the plaintiff was in a position of danger

and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.'' (*Brandelius* v. *City & County of San Francisco, supra,* 47 Cal.2d 729, 743; *Hildebrand* v. *Los Angeles Junction Ry. Co.,* 53 Cal.2d 826, 830 [3 Cal.Rptr. 313, 350 P.2d 65].) ▆ Whether the essential elements exist is controlled by the factual circumstances of each case and in determining whether it was proper for the trial court to instruct on last clear chance, the evidence must be viewed in the light most favorable to the application of the doctrine, including every reasonable inference in support thereof. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16, 19 [215 P.2d 728]; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645]; *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 617 [255 P.2d 785].) ▆ If any one of the elements is absent, the doctrine does not apply and the ordinary rules of negligence and contributory negligence govern. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 486 [283 P.2d 1].)

▆ Defendant contends that the doctrine was inapplicable in the instant case because plaintiff's negligence was ''continuing, positive and contributing.'' But as the court observed in *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, at p. 105: ''It does not mean that the doctrine is unavailable when plaintiff is negligent up to the time of collision, for his negligence is one of the factors that brings it into play.'' The element of plaintiff's continual negligence is present in all last clear chance cases. (*Girdner* v. *Union Oil Co.,* 216 Cal. 197, 203 [13 P.2d 915].)

The doctrine was first applied to an automobile intersection case in *Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, and has since been applied in other like cases. (*Peterson* v. *Burkhalter,* 38 Cal.2d 107 [237 P.2d 977]; *Wylie* v. *Vellis,* 132 Cal.App.2d 854 [283 P.2d 327]; *Hopkins* v. *Carter,* 109 Cal. App.2d 912 [241 P.2d 1063].)

Defendant contends that the doctrine is not applicable where plaintiff is driving a rapidly moving vehicle, citing

among other cases *Rodabaugh* v. *Tekus,* 39 Cal.2d 290 [246 P.2d 663]. In that case two cars were approaching an intersection at 40 miles per hour, the defendant being on a through highway protected by stop signs. Decedent failed to heed the stop sign and entered the intersection without reducing his speed. The court noted that defendant had a right to assume that decedent would see the stop sign and abide by it and that decedent was not in a position of peril until he reached the point at which he could no longer stop or slow down in time to avoid a collision. Under the evidence the court held that after decedent reached a point of peril which would be apparent to defendant, the latter did not have a clear chance to avoid the collision by the exercise of ordinary care.

*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, is distinguishable in several material respects. As the court noted in that case, it involved a through highway, a factor not present in other cases (nor in this case) in which the last clear chance doctrine had been applied, and the relationship between time, distance and speed were unlike those of earlier cases. (See *Rodabaugh* v. *Tekus, supra,* at p. 297.) ▉ In the present case defendant admitted that he knew plaintiff was in a perilous position but instead of applying his brakes he accelerated and made no attempt to stop until his vehicle was about to enter the intersection. There was expert testimony that defendant's vehicle would have stopped within an additional 3-5 feet from the point where the collision occurred had there been no impact. An inference could be reasonably drawn that after he became aware of plaintiff's perilous position, defendant had a reasonable opportunity to apply his brakes and with the exercise of due care could have stopped in time to avoid the collision.

Defendant argues that the time factor was such that, as a matter of law, the defendant did not have a reasonable opportunity to avoid the accident by the exercise of due care after he became aware of plaintiff's situation, citing *Hickambottom* v. *Cooper Transp. Co.,* 163 Cal.App.2d 489 [329 P.2d 609], an intersection collision case where the giving of the last clear chance instruction was held to be reversible error. In that case defendant testified that upon observing the other vehicle he immediately applied his brakes and swerved in an attempt to avoid the collision. There was no evidence as to the distance within which defendant could have stopped after applying his brakes. In those circumstances, the court held that there was no substantial evidence from which it could be inferred that

defendant saw the vehicle in time to avoid a collision or that he had a reasonable opportunity to do so thereafter. Although the court did note that defendant had less than two seconds to react and apply his brakes, the case does not stand for the proposition that as a matter of law a defendant having only two seconds to avoid a collision does not have the last clear chance. That proposition was rejected in *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107 at p. 112.

We conclude that the court did not err in instructing on last clear chance.

Defendant also contends that the court erred in refusing to give his requested instruction on the doctrine of imminent peril.

A party is entitled to an instruction on imminent peril when, without negligence on his part, he is immediately and unexpectedly confronted with a peril. (*Leo* v. *Dunham,* 41 Cal.2d 712, 714 [264 P.2d 1].) Where the negligence of the party seeking to invoke the doctrine contributed to the perilous situation, it is improper to give the instruction. (*Carley* v. *Zeigler,* 156 Cal.App.2d 643, 645 [320 P.2d 165]; *Vedder* v. *Bireley,* 92 Cal.App. 52 [267 P. 724]; *Yates* v. *Morotti,* 120 Cal.App. 710 [8 P.2d 519].) Whether the one seeking to invoke the doctrine was free of negligence is ordinarily a question of fact for the jury. Where the evidence would support a finding that he was not negligent and the conditions for the applicability of the doctrine are otherwise met, he is entitled to the instruction. (*Leo* v. *Dunham, supra,* 41 Cal.2d 712, 715.)

In the case under review the undisputed evidence is that the approaches to the intersection both from Oakwood and Live Oak Road were free of visual obstructions. Defendant testified nonetheless that he looked both to the right and left and never saw plaintiff's vehicle until the latter sounded his horn. In these circumstances the evidence discloses that defendant was negligently inattentive as a matter of law. (See *Huetter* v. *Andrews,* 91 Cal.App.2d 142, 145 [204 P.2d 655].) " ' "All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if the driver is looking, would constitute negligence as a matter of law." ' " (*Leeper* v. *Nelson,* 139 Cal.App.2d 65, 68 [293 P.2d 111]; *Hontou* v. *Orvis,* 42 Cal.App.2d 585 [109

P.2d 395]; *Holibaugh* v. *Ito,* 21 Cal.App.2d 480 [69 P.2d 871]; *Berlin* v. *Violett,* 129 Cal.App. 337, 340 [18 P.2d 737].)

Moreover, assuming that there was evidence which would have made it proper to give the instruction, the failure to give it did not necessarily constitute prejudicial error. There was overwhelming evidence to support the jury's implied finding that defendant was negligent.[1] An erroneous failure to give an instruction on imminent peril may be non-prejudicial where the evidence "without question" supports an implied finding of the jury that defendant was negligent. (*Biggar* v. *Carney,* 181 Cal.App.2d 22, 30-33 [5 Cal.Rptr. 94]. After reviewing the record (including the evidence), it is our opinion that the failure to give the instruction was, if error, nonprejudicial.

Defendant also complains that the court erred in giving an instruction on looking and not seeing. The instruction has been criticized as merely stating a truism, hence, it is not prejudicial error to refuse it. (See *Hom* v. *Clark,* 221 Cal. App.2d 622, 647-649 [35 Cal.Rptr. 11].) Thus where the evidence as to visibility was conflicting, it was held proper to refuse it. (*Abney* v. *Coalwell,* 200 Cal.App.2d 892, 899 [19 Cal.Rptr. 846].) But we have found no case in which it has been held prejudicial error to give the instruction. In the present case there was no evidence of any visual obstructions which prevented defendant from observing plaintiff's vehicle. The giving of the instruction was therefore, at most, nonprejudicial error.

Defendant contends that plaintiff's counsel was guilty of prejudicial misconduct. His brief, however, merely refers to the points and authorities in support of defendant's motion for a new trial without providing reporter's transcript references or citation of authorities. We have nevertheless reviewed the transcript and have considered the alleged acts of misconduct referred to in defendant's points and

---

[1] In arguing the motion for a new trial, defendant's counsel candidly told the trial court: "Now, let's move into the evidence and the question of whether it is sufficient to sustain this verdict. At the beginning I will concede in open court that the evidence supports the jury's implied finding that my client was negligent. The Court will recall that my client stated that he never saw the plaintiff's vehicle at any time before entering the intersection, even though he was at an open desert area where it would seem he couldn't help but have seen plaintiff's vehicle, so I will concede to the Court that the evidence clearly establishes my client was negligently inattentive. The Court has the power, of course, to disagree with the jury on that point, and I wouldn't want to persuade the Court in finding otherwise, but, in candor, I must concede that the evidence supports that point."

authorities and conclude that the contention is without substance. The record fails to disclose any objection to the alleged improper remarks of plaintiff's counsel or any request that the jury be admonished to disregard them. Counsel's misconduct may not be raised for the first time on appeal where admonishment was not requested and if an admonishment would have removed the effect of the alleged misconduct. (*Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 26 [204 P. 393] ; see *Hoffman* v. *Brandt*, 65 Cal.2d 549, 553 [55 Cal.Rptr. 417, 421 P.2d 425].)

Finally defendant contends that his motion for a judgment notwithstanding the verdict should have been granted. From what has heretofore been stated, it is apparent that this contention is likewise without substance.

Judgment affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

A petition for a rehearing was denied December 26, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1968.